UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SUSAN L.,[1]

                Plaintiff,

      v.                                      6:20-cv-06877-LJV
                                                 DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____

On October 21, 2020, the plaintiff, Susan L. ("Susan"), brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] Docket Item 1. On September 16, 2021, Susan moved for judgment on the pleadings, Docket Item 9; on February 11, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on March 25, 2022, Susan replied, Docket Item 15.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Susan applied for Disability Insurance Benefits ("DIB"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court grants Susan's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (alterations omitted). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## DISCUSSION

### I.   ALLEGATIONS

Susan argues that the ALJ erred in two ways.  Docket Item 9-1.  First, she

argues that the ALJ's step-two determination that her anxiety and PTSD were not

severe was not supported by substantial evidence.  *Id.* at 7.  Second, she argues that

the ALJ failed to take her non-severe mental impairments into account when making his

determination of her residual functional capacity ("RFC").[4]  *Id.* at 9.  The Court agrees

that the ALJ erred and, because that error prejudiced Susan, remands this case to the

Commissioner.

### II.   ANALYSIS

#### A.  The ALJ's Step-Two Determination

Susan first argues that the ALJ's determination at step two that her anxiety and

PTSD were not severe impairments was not supported by substantial evidence.  Docket

Item 9-1 at 7.

Disability under the Act is determined under a five-step test; at the second step,

the ALJ decides whether the claimant has any "severe" impairment—that is, a medically

determinable impairment or a combination of impairments that significantly limits the

claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  "Basic work

activities" are "abilities and aptitudes necessary to do most jobs."  20 C.F.R.

§ 404.1522(b).  With respect to basic mental work activities, the ALJ assesses the

---

[4] A claimant's RFC "is the most [she] can do despite [her] limitations," 20 C.F.R.
§ 404.1545, "in an ordinary work setting on a regular and continuing basis," *see Melville
v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86-8, 1986 WL 68636, at *8 (Jan.
1, 1986)).  "A regular and continuing basis means 8 hours a day, for 5 days a week, or
an equivalent work schedule."  *Id.*

claimant's degree of limitation in four areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting and managing oneself.  20 C.F.R. §§ 404.1520a(a), (c); *see Thomas v. Berryhill*, 337 F. Supp. 3d 235, 239 (W.D.N.Y. 2018) (discussing an ALJ's application of the "special technique" for non-exertional limitations).

At step two of Susan's disability determination, the ALJ found her major depressive disorder and anxiety disorder to be non-severe.  Docket Item 8 at 42-43. The ALJ concluded that Susan had (1) no limitations in understanding, remembering, or applying information; (2) mild limitations in interacting with others; (3) mild limitations in her ability to concentrate, persist, or maintain pace; and (4) no limitations in her ability to adapt or manage herself.  *Id.* at 43.  Susan argues that the ALJ erred in this regard because she "clearly had mental health impairments which caused more than a de minimus [sic] limitation."  Docket Item 9-1 at 9.[5]

---

[5] Susan states that the following conclusively establishes the severity of her mental conditions:

> First, [Susan] routinely complains of anxiety.  She is prescribed various anti-anxiety medications.  [Susan] testified she had depression and anxiety.  She testified her medications made her sick and fatigue[d].  Due to her anxiety, she had problems getting along with others.  She would lose her temper.  She would get impatient. She found it hard to enjoy things.  She had anxiety constantly.  Her thoughts would "take over."  Dr. Brownfield [sic] opined [that she] had moderate limitations in regulating emotions, controlling behavior, and maintaining well-being and interacting adequately with supervisors, co-workers, and the public.  On examination, her affect was depressed[,] and her mood was dysthymic.

Docket Item 9-1 at 9 (internal citations omitted).

Susan's argument is not persuasive.  "It is not enough for [Susan] to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position."  *Dailey v. Comm'r of Soc. Sec.*, 2016 WL 922261, at *6 (N.D.N.Y. Feb. 18, 2016), *adopted*, 2016 WL 917941 (N.D.N.Y. March 10, 2016).  Under the substantial evidence standard of review, Susan must show that the ALJ's findings of fact were so far off that "a reasonable factfinder *would have to conclude otherwise*."  *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).  In his decision, the ALJ explicitly applied the required "special technique" and supported his conclusions in each of the four areas with far more than a scintilla of record evidence.  Docket Item 8 at 43-44.  Therefore, the ALJ's step-two determination is supported by substantial evidence, and Susan has not met her burden of showing otherwise.

### B.  The ALJ's RFC Determination

As part of step four of the sequential disability analysis, the ALJ determines the claimant's RFC.  20 C.F.R. § 404.1520(e).  In determining Susan's RFC, the ALJ found that she could perform the full range of light work with no mental health limitations.[6]  Docket Item 8 at 44.  Susan asserts that the ALJ failed to address her non-severe mental health impairments in formulating the RFC.  Docket Item 9-1 at 7-11.  And this Court agrees.

---

[6] "Light work" is defined as that which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 1567(b).

If an impairment is non-severe, that does not mean that the ALJ simply can ignore it when assessing a claimant's RFC.  *Felix S. v. Comm'r of Soc. Sec.*, -- F. Supp. 3d --, 2022 WL 4486319, at *4 (W.D.N.Y. 2022) ("Simply because the ALJ concluded that Plaintiff's mental limitations were non-severe impairments does not relieve him of the duty to consider them in connection with assessing the RFC.").  On the contrary, an RFC determination "must account for limitations imposed by both severe and non[-]severe impairments."  *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012).   And if an ALJ fails to explain why he did not include limitations to account for a claimant's non-severe mental impairments, that legal error requires remand.  *Felix S.*, 2022 WL 4486319, at *5 (W.D.N.Y. 2022); *see David Q. v. Comm'r of Soc. Sec.*, 2022 WL 806628, at *6 (W.D.N.Y. Mar. 17, 2022) (remanding where the ALJ failed to include work-related mental limitations in RFC after finding depression to be a non-severe impairment and finding the consultative examiner's opinion that the claimant had mild to moderate mental limitations to be "persuasive").

Here, the ALJ determined Susan's major depressive and anxiety disorders to be non-severe impairments at step two of the disability determination.  Docket Item 8 at 42-43.  And at step two, the ALJ said that he "considered all of [Susan's] medically determinable impairments, including those that are not severe," in determining her RFC.  *Id.* at 42.  Likewise, he acknowledged that "[t]he mental [RFC] assessment at steps 4 and 5 . . . requires a more detailed assessment" than that done at step two, and he said that the RFC "reflects the degree of limitation [that he] found in the 'paragraph B' mental function analysis."  *Id.* at 44.  So the ALJ paid lip service to the rules in his decision.

But other than that boilerplate language at step two, there is absolutely no indication that the ALJ actually performed the "more detailed" mental RFC assessment that he noted he was required at steps four and five.  In fact, at step four the ALJ addressed only Susan's severe impairments—all of them physical.  *See id.* at 44-46. He never even mentioned any impairments that are not severe, and he addressed mental issues only in passing, observing that Susan "did not have any new physical or mental conditions."  *Id.* at 45.

So while the ALJ said that at step four he needed to perform a more detailed assessment of Susan's mental limitations than he performed at step two, there is no evidence that he actually did that.  In fact, there is evidence that he did not.

For example, at step two, the ALJ discussed the opinion of Adam Brownfeld, Ph.D., who performed a consultative psychiatric evaluation on November 28, 2017. Docket Item 8 at 42 (citing Docket Item 8 at 325-28).  Dr. Brownfeld opined that Susan had "moderate limitations in regulating emotions, controlling behavior, maintaining well-being[,] and . . . interacting adequately with supervisors, coworkers[,] and the public."[7] *Id.* at 327.  The ALJ found Dr. Brownfeld's opinion to be "partially persuasive."  *Id.* at 42. But the ALJ also found that "the portion of [the] opinion addressing moderate limitations of function appeared to be somewhat overstated, as this portion of [the] opinion is inconsistent with the record and internally inconsistent with [the] mental status

---

[7] Dr. Brownfeld found Susan not to have any limitations in "understanding, remembering[,] and applying simple and complex directions and instructions, using reason and judgment to make work-related decisions, sustaining concentration[,] . . . performing a task at a consistent pace[,] . . . maintaining personal hygiene and appropriate attire[,] [or] her ability to be aware of normal hazards and take appropriate precautions."  Docket Item 8 at 327.

evaluation showing that [Susan] was cooperative, presentation was adequate[,] and [that she] had [a] good relationship with family members." *Id.*

The ALJ said nothing about Dr. Brownfeld or his opinion at step four. And while the ALJ's explanation at step two was sufficient for his step-two finding that Susan's mental limitations were non-severe, more was required at step four, as the ALJ himself acknowledged. *See* Docket Item 8 at 44. So the ALJ did not perform the more detailed analysis that was required.

What is more, the ALJ found that Susan had some mild, non-severe limitations at step two, but he said nothing about those limitations at step four, nor did he include them in the RFC. *Compare* Docket Item 8 at 43 (finding that Susan has mild limitations in concentrating, persisting, maintaining pace, and interacting with others) *with id.* at 44-46. And that was error as well. *See Felix S.*, 2022 WL 4486319 at *3; *Jatava L. v. Comm'r of Soc. Sec.*, 2021 WL 4452265, at *5 (W.D.N.Y. Sept. 28, 2021) ("[E]ven if the record did support a step-two finding that plaintiff's mental impairments were non-severe, the ALJ was still obligated to consider those impairments in formulating the RFC . . . . [D]espite giving significant weight to Dr. Dolan's finding that plaintiff had mild mental health limitations in two areas of functioning, the ALJ did not include any mental limitations in the RFC nor did he explain the absence of such limitations."); *Peters v. Comm'r of Soc. Sec.*, 2020 WL 772364, at *4 (W.D.N.Y. Feb. 18, 2020) ("Defendant's argument that a finding of a non-severe impairment at step two automatically supports a finding that there are no mental work-related limitations is . . . unsuccessful").

Perhaps the ALJ meant to include some mental limitations in the RFC; after all, he said that the RFC "reflects the degree of limitation . . . found in the 'paragraph B'

mental function analysis." Docket Item 8 at 44. Or perhaps he believed that the mild, non-severe limitations required no accommodations. Either way, the analysis at step four says absolutely nothing about the non-severe mental health limitations the ALJ found at step two, and the ALJ's decision therefore does not provide enough for this Court to evaluate the validity of his findings. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)) (holding that the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that ' . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'") (third alteration in original).

For all those reasons, remand is required so that the ALJ can address Susan's mental limitations at step four and either include those limitations in the RFC or explain why that is not necessary.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 12, is

DENIED, and Susan's motion for judgment on the pleadings, Docket Item 9, is

GRANTED in part and DENIED in part.  The decision of the Commissioner is

VACATED, and the matter is REMANDED for further administrative proceedings

consistent with this decision.


SO ORDERED.

Dated:      November 3, 2022
             Buffalo, New York


                                        */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE